UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM MEEKINS, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL NO. 3:CV-05-1394 |
| | : |
| RAYMOND COLLERAN, et al., | : (Judge Kosik) |
| | : |
| Defendants | : |

**M E M O R A N D U M**

Plaintiff William Meekins filed this civil rights action on July 12, 2005. The matter proceeds on an amended complaint and several supplements thereto. (Docs. 17, 19, 24-26.) Following the court's resolution of a motion to dismiss filed by all Defendants in this action, the remaining Defendants are former or current employees at the State Correctional Institution at Waymart, Pennsylvania. These Defendants are Raymond Colleran, former Superintendent; Larry Ellett and Dave Bowan, correctional officers; Donald J. Jones, Hearing Examiner; Joseph Nish, former Deputy of Central Services; Paul DelRosso, former Deputy of Program Management and Michael Klopotoski, former Deputy Superintendent of Facilities Management. After filing an answer to the complaint, the parties were afforded the opportunity to engage in discovery. Presently pending is the remaining Defendants' motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. 109.)  A brief, statement of material facts, and evidentiary materials have been filed in support of the motion.  (Docs. 110-112.)  Plaintiff failed to file an appropriate response to the motion.  He was afforded an opportunity to respond to the motion for summary judgment in accordance with the Fed. R. Civ. P. 56 and L.R. 56.1, and was advised that his failure to timely respond would result in the motion being deemed unopposed.  (Doc. 116, citing <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29 (3d Cir. 1991).)  Plaintiff has failed to respond to Defendants' motion.  Consequently, the motion is deemed unopposed and, for the reasons set forth below, will be granted.

## I.     Statement of Material Facts[1]

At all relevant times, Plaintiff was confined at SCI-Waymart and Defendants were employees there.[2]  On December 7, 2004, Plaintiff was being escorted to the Restrictive Housing Unit ("RHU") by Defendants Ellett and Bowan. (Doc. 112, Meekins Depo. at 15.)  He claims he was pushed against the door by Defendants.  (<u>Id</u>. at 19.)  However, he further states that the door was in the process of being opened,

---

[1] Defendants filed a statement of material facts on March 12, 2008.  (Doc. 110.)  "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."  M.D. Pa. L.R. 56.1.  Plaintiff did not contest the Defendants' statement.  Therefore, the statement, which is adequately supported by the record, is deemed admitted and adopted by the court.

[2] On November 16, 2005, Plaintiff was transferred to the Special Management Unit at SCI-Camp Hill.  (Doc. 112, DelRosso Decl. at ¶ 7.)

but did not pop open; it closed back right away. (Id. at 20.) Plaintiff states that he did not know if the Defendants thought the door was going to stay open or whether it was unintentional that his face and chest hit the door. He was thereafter placed in his RHU cell. (Id.) With regard to this incident, Plaintiff admits that he suffered no injuries. He did not see medical staff that day or ask to see medical staff. (Id. at 45.) While at SCI-Waymart, Plaintiff received a total of 7 misconduct reports. (Id. at 32; Ex. 3.) Plaintiff complains about his placement in a camera cell in the RHU and the conditions therein.

Defendant Colleran was formerly employed at SCI-Waymart as the Superintendent from November 29, 1998 until his retirement on June 29, 2005. (Doc. 112, Colleran Decl. ¶ 1.) He normally did not get involved in the day-to-day operations of the institution and had two Deputy Superintendents who reported directly to him. He is not familiar with Plaintiff, although Plaintiff was housed at SCI-Waymart at the time of Colleran's retirement. (Id., ¶¶ 2,3.) He does not recall receiving any complaints from Plaintiff regarding conditions in the RHU or retaliation by staff. On occasion, he did handle appeals by Meekins' from inmate misconducts issued to him. Colleran upheld a decision of the Hearing Examiner with respect to Misconduct Report A346264 wherein Plaintiff was found guilty of assault. In denying the appeal, Colleran found that "all procedures used in this case were proper, the findings of fact were sufficient to support the decision of the hearing

3

examiner and the punishment was proportionate to the offense." (Id., ¶ 5.)

On occasion Colleran also reviewed Plaintiff's appeals from inmate grievances which he filed while at SCI-Waymart. On January 6, 2005, he upheld the response to grievance 103449 which alleged harassment by officers in the RHU. Colleran had found that Plaintiff had been "disruptive and uncooperative. (Id., ¶ 6.) At no time did Colleran ever retaliate against Plaintiff. (Doc. 112, Colleran Decl., ¶ 7.)

Defendant Jones was employed as a Hearing Examiner by the DOC at SCI-Dallas from November 27, 1986 until his retirement in June of 2007. He was a former Hearing Examiner at SCI-Waymart. While there, he heard testimony and rendered decisions with regard to 5 of the 7 misconduct reports issued to Plaintiff. (Id., Jones Decl. ¶ 3.)

On September 7, 2004, Defendant Ellett issued Misconduct Report A296165 to Plaintiff charging him with threatening an employee or their family with bodily harm and other charges. Plaintiff pled guilty to the charges at the hearing. As a result, Jones sentenced him to the loss of his job and 180 days in disciplinary custody status. (Doc. 112, Jones Decl. at ¶ 4 and Ex. A.) On the same date, Defendant Bowan issued Misconduct Report A346264 to Plaintiff charging him with assault against staff. He pled not guilty at the hearing. After hearing Plaintiff's testimony, Jones sentenced him to 90 days in disciplinary custody status. (Id. at ¶ 5 and Ex. B.) Jones denies that he retaliated against Plaintiff in any manner and states that all his decisions were

based upon the testimony and evidence presented to him. (Id. at ¶ 6.)

At the relevant time, Defendant Nish was employed as Deputy Superintendent of Centralized Services at SCI-Waymart, handling matters related to inmate records, education, medical services, food services and other inmate activities.  He is familiar with Plaintiff and states that shortly after Plaintiff's transfer to SCI-Waymart, he was placed in the RHU because of misconducts he received.  While housed there, Plaintiff received 90 day reviews by the Program Review Committee ("PRC"), of which Nish was a member.  (Doc. 112, Nish Decl., ¶¶ 2-3.)

The reports from the RHU on Plaintiff frequently remarked on his poor attitude to staff and problem with authority.  On one occasion during a PRC review, he became very argumentative and emotional.  As a result of his behavior, he continued to receive new misconduct reports.

Ten (10) of the cells within the SCI-Waymart RHU are equipped with cameras.  The purpose of confinement in these particular cells is to monitor the behavior of inmates considered to be disruptive or problematic.  The cells do not contain movable objects and inmates receive only the basic issue which includes a blanket, a pillow, socks, t-shirts, underwear, toiletries and paperwork.  (Id., Nish Decl. at ¶¶ 4-5.)  Plaintiff was housed in the RHU beginning on September 7, 2004, and was in a camera cell from January 7, 2005 to March 19, 2005.  His placement in a camera cell was first due to his expression of a desire to attack RHU staff and then, on a second

5

occasion, due to becoming disruptive during the PRC session. Otherwise, Plaintiff was housed in a non-camera cell during his periods of RHU confinement until his transfer to SCI-Camp Hill on November 16, 2005.  He incurred a total of 630 days of DC time while confined at SCI-Waymart.  (Id. at ¶ 6.)

Nish does not recall Plaintiff ever complaining about conditions in the RHU and the PRC reports do not reflect any complaints about the conditions therein.  In addition, Nish does not recall any grievances being filed by Plaintiff regarding the RHU conditions.  (Id. at ¶¶ 6, 7.)

As a member of the PRC, Nish also handled first level appeals from misconducts issued to Plaintiff.  He was on the PRC which considered Plaintiff's appeal of misconduct A299179 for threatening an employee or their family. Plaintiff's finding of guilt was upheld due to Plaintiff's failure to present any new evidence.  (Id., Nish Decl. at ¶ 8; Ex. B.)

Defendant DelRosso was employed as the Deputy Superintendent for Centralized Services at SCI-Waymart from August 2005 until the present time.  Prior to that, he was a Corrections Classification Program Manager there.  He is also a member of the PRC that reviewed Plaintiff while confined in the RHU and found his behavior to be poor, at times disruptive and argumentative.  (Doc. 112, DelRosso Decl. at ¶¶ 1-4.)  He does not recall ever receiving complaints from Plaintiff regarding the conditions in the RHU and states that his temporary confinement in the

6

camera cell was for his own safety and based on his disruptive behavior, and not for any retaliatory purpose. (Id. at ¶¶ 5, 8.)

From July 24, 2004 until January 13, 2008, Defendant Klopotoski was employed at SCI-Waymart as the Deputy Superintendent for Facilities Management. He is familiar with Plaintiff and served on the PRC which reviewed Plaintiff's status in the RHU every 90 days. (Doc. 112, Klopotoski Decl. at ¶¶ 1-3.) According to reports from the RHU, Plaintiff's attitude and behavior was poor, at times becoming very loud, belligerent and using profanity. (Id. at ¶ 4.) Klopotoski, as well as other members of the PRC, also considered Plaintiff's misconduct appeals at times. He and DelRosso were part of the PRC which upheld misconducts A296165 and A346264, rejecting Plaintiff's contention that the charges were fabricated, and finding that the charges were serious. (Id., Klopotoski Decl. at ¶ 5; DelRosso Decl. at ¶ 6.)

## II.    Standard of Review

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F.Supp. 2d 311, 314 (M.D. Pa. 2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004). "Such affirmative evidence- -

regardless of whether it is direct or circumstantial- - must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)(quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see Fed. R. .Civ. P. 56(c), (e).

### III. Discussion

#### A. Exhaustion

Only the following three claims remain in this action: the retaliation claim, the excessive force claim and Plaintiff's challenge to the conditions of confinement in the RHU. In the pending motion for summary judgment, Defendants argue that the retaliation and conditions of confinement claims are unexhausted.

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126 S. Ct. 2378 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA also mandates that inmates "properly" exhaust administrative

remedies before filing suit in federal court. Woodford, 126 S. Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill, 372 F.3d at 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Jones v. Bock, 127 S. Ct. 910, 921 (2007). Failure to exhaust available administrative remedies is an affirmative defense. As such, it must be pleaded and proven by the Defendants. Id.; Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

Defendants maintain that Plaintiff has failed to exhaust his retaliation and conditions of confinement claims in accordance with the required procedures set forth in DC-ADM 804 entitled "Inmate Grievance System." In support of their argument, they submit the Declaration of Keri Moore, Administrative Officer 2, who is employed in the Secretary's Office of Inmate Grievances and Appeals. (Doc. 112, Moore Decl. at ¶¶ 1, 2.) Pursuant to DC-ADM 804, after pursuing informal attempts at resolution, an inmate submits a grievance for initial review to the Grievance Coordinator at the institution where the inmate is confined. If the inmate is

9

dissatisfied with the response he receives from the Coordinator, he can appeal the matter to the Facility Manager or the Superintendent. If dissatisfied with the decision received at this level of appeal, he may appeal to the final level of review - - the Secretary's Office of Inmate Grievances and Appeals. See DC ADM 804 (VI); (Id., Moore Decl. at ¶ 3).

Following Moore's review of the records in the Secretary's Office concerning grievance appeals, there is no record of any such appeals to final review of grievances filed by Plaintiff concerning retaliation and/or the conditions in the RHU at SCI-Waymart. (Id., Moore Decl. at ¶¶ 4,5.)

Plaintiff has not opposed Defendants' motion for summary judgment and there is nothing in the record to create an issue of fact regarding whether Plaintiff has exhausted these claims. Plaintiff has failed to submit any evidence creating an issue of fact regarding exhaustion and, as such, Defendants are entitled to an entry of summary judgment on the retaliation and conditions of confinement claims.

### B. Excessive Force Claim

Defendants also contend they are entitled to summary judgment with regard to Plaintiff's excessive force claim against Defendants Ellett and Bowan. In support thereof, they submit the declarations of each of said Defendants, and excerpts from Plaintiff's deposition transcript.

Defendants first state that the excessive force claim should be dismissed

because Plaintiff concedes he did not suffer any injuries as a result of the alleged assault. However, in the complaint, he seeks compensatory damages for "psychological damages" (Doc. 17, Amended Compl. at 3), but admits in his deposition that he did not suffer any injury as a result of the alleged assault, as well as concedes that he did not see medical staff on the day of the incident or ask to see medical staff. (Doc. 112, Meekin Depo. at 45.) Under the Prison Litigation Reform Act, no federal civil action may be brought by an inmate for mental or emotional distress without a prior showing of physical injury. 42 U.S.C. § 1997e(e).

Further, Defendants contend that summary judgment is warranted because the undisputed facts clearly establish that no excessive force was used in violation of the Eighth Amendment. The use of excessive force against prisoners may constitute cruel and unusual punishment in violation of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). The Eighth Amendment protects inmates from "unnecessary and wanton infliction of pain." Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000)(quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)(citations and internal quotations omitted)). "[T]here is no constitutional violation for 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir. 2000)(quoting Hudson, 503 U.S. at 9-10). However, the degree of injury, if any, is a relevant factor in the determination of the excessiveness of the force used. See id. at 106.

11

When an inmate plaintiff raises an excessive use of force claim, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" See id. (quoting Hudson, 503 U.S. at 7.)  The following factors guide this inquiry:

> (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them' and (5) 'any efforts made to temper the severity of a forceful response.'

Id. (quoting Whitley, 475 U.S. at 321).

The undisputed facts in this case establish that Plaintiff was not injured and did not have to seek medical care as a result of hitting the door.  (Doc. 112, Plaintiff's Depo. at 45.)  Further, according to Plaintiff's own deposition testimony, while he was being escorted to the RHU, the door to the RHU was in the process of being opened but "it didn't pop open."  According to Plaintiff, the door closed back right away.  (Id. at 20.) Plaintiff further states that he did not know if Defendants Ellett and Bowan thought the door was going to stay open or whether it was unintentional that his face and chest hit the door.  (Id.)

Based on the foregoing, it is clear that Plaintiff has failed to demonstrate any issues of fact that Defendants' actions involved the use of force of a sort repugnant to the conscience of mankind or that any actions taken by them were maliciously and sadistically applied to cause harm.  Accordingly, summary judgment is warranted on

12

the excessive force claim.

## IV. <u>Conclusion</u>

Based on the foregoing, Defendants' motion for summary judgment will be granted. An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM MEEKINS, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL NO. 3:CV-05-1394 |
| | : |
| RAYMOND COLLERAN, et al., | : (Judge Kosik) |
| | : |
| Defendants | : |

# **O R D E R**

**AND NOW, THIS 6th DAY OF OCTOBER, 2008, IT IS HEREBY**

**ORDERED AS FOLLOWS:**

1. Defendants' motion for summary judgment (Doc. 109) pursuant to Federal Rule 56 is deemed unopposed, see L.R. 56.1, see Stackhouse v. Mazurkiewicz, 951 F.2d 29 (3d Cir. 1991), and is **GRANTED**.

2. The Clerk of Court is directed to **ENTER** judgment in favor of the remaining Defendants and against Plaintiff.

3. The Clerk of Court is further directed to **CLOSE** this case.

4. Any appeal from this order is deemed frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

*s/EDWIN M. KOSIK*
United States District Judge